
EOD
07/30/2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHARLES DALE AMES, | § | CASE NO. 10-43401 |
| DANIEL A. MAGEE, | § | CASE NO. 11-40023 |
| GLENROY KEVIN PAYNE, ET UX., | § | CASE NO. 11-40386 |
| | § | |
| Debtors. | § | CHAPTER 7 (all) |
| _____ | § | |
| | § | |
| CHRISTOPHER J. MOSER, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | ADVERSARY NO. 13-04011 |
| | § | ADVERSARY NO. 13-04025 |
| v. | § | ADVERSARY NO. 13-04024 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION REGARDING
MOTIONS FOR SUMMARY JUDGMENT
IN COMPANION CASES**

The plaintiff and defendant filed competing motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, as adopted and applied to bankruptcy cases and proceedings by Federal Rule of Bankruptcy Procedure 7056. The parties filed their motions in three different adversary proceedings. While each adversary proceeding relates to a different chapter 7 case, each proceeding involves identical causes of action brought by Christopher J. Moser, as the chapter 7 bankruptcy trustee, against the United States for federal income tax refunds from the Internal Revenue Service ("IRS").

1

The Court heard arguments regarding the motions on May 5, 2014. At the conclusion of the hearing, the Court took the motions under advisement in order to prepare a detailed written ruling. The Court also invited the parties to file supplemental briefs. Having considered the motions, the responses, the arguments at the hearing, the supplemental briefs, and the applicable law, the Court makes the following findings of fact and conclusions of law.[1]

## I. JURISDICTION

This is the second set of adversary complaints filed by the chapter 7 trustee against the United States in connection with these bankruptcy cases. In his first set of adversary complaints, the chapter 7 trustee sought to avoid as fraudulent transfers, pursuant to 11 U.S.C. § 548(a), each respective debtor's election to forego net operating loss carrybacks in accordance with 26 U.S.C. § 172(b)(3). The parties entered into agreed judgments in each adversary proceeding.

In the present adversary proceedings, the trustee seeks to collect the value of the avoided transfers from the United States pursuant to 11 U.S.C. § 550(a). The United States and the chapter 7 trustee disagree about the value of the avoided transfers. This Court has jurisdiction over these matters pursuant to the provisions of 28 U.S.C. §§1334 and 157 and 1346(a)(1). Further, these matters constitute "core" proceedings within the meaning of 28 U.S.C. §157(b)(2).

---

[1] Any finding of fact deemed to be a conclusion of law is hereby adopted as such. Likewise, any conclusion of law deemed to be a finding of fact is hereby adopted as such.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are authorized by Civil Rule 56. The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)).

In this case, the parties have stipulated in their motions and arguments that there is no factual dispute in need of resolution. They have presented opposing motions for summary judgment based upon the application of appropriate law. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995). The parties' competing motions for summary judgment set forth the following body of uncontested facts.

## III. UNCONTESTED FACTS

Before initiating the present adversary proceedings, the chapter 7 trustee filed adversary proceedings against the United States in connection with each of the

underlying bankruptcy cases. The Court assigned those prior adversary proceedings numbers 11-04018 (Ames), 11-04060 (Magee), and 11-04115 (Payne). In each instance, within two years of filing bankruptcy, the debtor had filed a federal income tax return for 2008 and/or 2009. Although each of the debtors had incurred a net operating loss ("NOL"), the debtors affirmatively elected not to apply those losses as a credit to offset their gains, if any, in the prior two years. Such elections are normally irrevocable once made. The trustee asked this Court to set aside each of the debtor's elections to waive the carryback of the NOLs as a fraudulent transfer under 11 U.S.C. §§ 548 and 550.[2]

The United States initially disputed whether an irrevocable election to waive the carryback of an NOL is a fraudulent transfer. However, at a hearing on June 23, 2011, the United States explained that it would enter into agreed judgments as to this issue based upon the opinions of the courts in *In re Russell*, 927 F.2d 413 (8th Cir. 1991), *In re Feiler*, 218 F.3d 948 (9th Cir. 2000), and *United States v. Kapilla*, 402 B.R. 56 (S.D. Fla. 2008). The United States and the trustee agreed that the NOLs were property of the estate, the affirmative elections by the debtors to waive the carryback of the NOLs were transfers of property of the estate, and the elections made by the debtors were void.

---

[2] As discussed below, Congress passed a special provision of the IRC in 2009 that allowed taxpayers to affirmatively request their NOLs to be carried back for more than two years. The trustee did not challenge the debtors' failures to elect an extended carryback under this provision as a fraudulent transfer or an unauthorized post-petition transfer. To the extent a debtor's failure to elect an extended carryback can be construed as a fraudulent transfer of property of the estate, such a transfer is voidable, not void. *In re Best Prods. Co.,* 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994).

4

In the original adversary complaints, the trustee alleged that the NOLs could be carried back to 2004, which would result in a substantial recovery or receivable for the bankruptcy estates. The United States disputed this allegation. The agreed judgments did not resolve the question of what recovery, if any, the estates would receive. The agreed judgments found that "[p]ursuant to 11 U.S.C. §550(a)(1) the Trustee is entitled to amend the tax returns … to carry the NOLs backwards to prior years to **potentially** create a tax refund for the benefit of the bankruptcy estate." (Emphasis added.) The agreed judgments contained the following order:

> The Trustee is hereby authorized and empowered with the full right, power and authority to file the appropriate tax forms for the Debtor, to carry the NOLs for the tax years 2008 and/or 2009 backwards to prior years, **as allowed by statute**, and to obtain **any** and all related refunds which **may** arise therefrom. Any such refunds shall be property of the estates and payable to Christopher J. Moser, Trustee.

(Emphasis added.)

Subsequently, the trustee filed amended tax returns and claims for refunds for each debtor. In the amended returns, the trustee requested that the NOLs be carried back to years that were four or five years prior to the year in which the NOL was incurred under a special provision of the Internal Revenue Code ("IRC"). This special provision, *see* 26 U.S.C. § 172(b)(1)(H), is in contrast to the usual rule that carries back NOLs to the two years prior to the loss year, *see* 26 U.S.C. § 172(b)(1)(A). The IRS denied the trustee's refund claims on the grounds that the affirmative election for taking a three-, four-, or five-year carryback had not been timely, or validly, made.

### A. The Ames Bankruptcy Case

Charles Dale Ames filed a federal income tax return on Form 1040 for the taxable and calendar year 2009 (the "2009 Return") on or about October 10, 2010. The 2009 Return established the existence of a regular NOL. Ames affirmatively waived the carryback of the NOL in his 2009 Return. Ames did not have gains in the two years prior to bankruptcy to which a standard, two-year carryback could have been applied.

Ames filed for bankruptcy on October 1, 2010. After obtaining the agreed judgment, the chapter 7 trustee filed an amended 2009 Return on July 3, 2012. In the amended 2009 Return, the chapter 7 trustee asserts that he is electing under IRC § 172(b)(1)(H) to carryback the NOL to 2004. The statutory deadline for making an election under § 172(b)(1)(H) was October 15, 2010 – a few days after Ames filed for bankruptcy and before the chapter 7 trustee filed the prior adversary proceeding. Nonetheless, based on the agreed judgment in the prior adversary proceeding, the chapter 7 trustee seeks a refund in the amount of $38,463.

### B. The Daniel A. Magee Bankruptcy Case

Daniel A. Magee filed a federal income tax return on Form 1040 for the taxable and calendar year 2008 (the "2008 Return") on or about April 15, 2009. The 2008 Return established the existence of a regular NOL. Magee waived the carryback of the NOL in his 2008 Return. Magee did not have gains in the two years prior to bankruptcy to which a standard, two-year carryback could have been applied.

Magee filed for bankruptcy on January 3, 2011. After obtaining the agreed judgment, the chapter 7 trustee filed an amended 2008 Return on June 27, 2012. In the amended 2008 Return, the chapter 7 trustee asserts that he is electing under IRC § 172(b)(1)(H) to carryback the NOL to 2004. The statutory deadline for making an election under § 172(b)(1)(H) was October 15, 2010 – before Magee filed for bankruptcy and before the chapter 7 trustee initiated the prior adversary proceeding. Nonetheless, based on the agreed judgment in the prior adversary proceeding, the chapter 7 trustee seeks a refund in the amount of $21,206.

## C. The Glenroy Kevin Payne Bankruptcy Case

Glenroy Kevin Payne filed a federal income tax return on Form 1040 for the taxable and calendar year 2008 (the "2008 Return") on or about April 15, 2009. The 2008 Return established the existence of a regular NOL. Payne waived the carryback of the NOL in the 2008 Return. Payne did not have gains in the two years prior to bankruptcy to which a standard, two-year carryback could have been applied.

Payne filed for bankruptcy on February 3, 2011. After obtaining the agreed judgment, the chapter 7 trustee filed an amended 2008 Return on June 27, 2012. In the amended 2008 Return, the chapter 7 trustee asserts that he is electing under IRC § 172(b)(1)(H) to carryback the NOL to 2003. The statutory deadline for making an election under § 172(b)(1)(H) was October 15, 2010 – before Payne filed for bankruptcy and before the chapter 7 trustee initiated the prior adversary proceeding. Nonetheless, based on the agreed judgment in the prior adversary proceeding, the chapter 7 trustee seeks a refund in the amount of $42,761.

7

## IV. ANALYSIS

### A. Net Operating Losses (Generally)

Section 172(a) of the IRC allows taxpayers a deduction for their net operating loss, commonly known as an NOL. Section 172(b) generally allows the NOL to be carried back to prior years or carried over to future years and taken as a deduction against the taxable gain from those years. If the taxpayer previously reported taxable gain in a prior year, the carryback may result in the refund of taxes previously paid. A carryover may result in a reduction of future tax liabilities. As a general rule, § 172(b)(1)(A) provides that an NOL will first be carried back to each of the two taxable years preceding the year of loss. If there were insufficient gains in those prior years to fully absorb the loss, then any remaining loss will carry over to each of the next twenty taxable years following the loss year.

However, § 172(b)(3) allows the taxpayer to make an irrevocable election to relinquish the carryback and to instead treat the NOL as a carryover to future years. So, under the general rule, a NOL will be carried back two years as the default, but the taxpayer may waive that and instead carry forward the loss. This was the issue in the prior adversaries. Prior to filing for bankruptcy, the debtors had made irrevocable § 172(b)(3) elections to waive the carryback. The chapter 7 trustee successfully set aside those elections as fraudulent transfers. The present dispute is whether the chapter 7 trustee may now affirmatively elect an extended carryback of the NOLs under a special provision of the IRC.

## B. THE WHBAA OF 2009

As part of the economic stimulus packages passed in 2009, Congress enacted the Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, 123 Stat. 2984 (November 6, 2009) (hereinafter, the "WHBAA"). Section 13 of the WHBAA amended IRC § 172(b)(1)(H). The amended § 172(b)(1)(H) allows a taxpayer to carryback an NOL incurred in either taxable year 2008 or 2009 for a period of three, four, or five years, rather than the general rule of two years.[3]

In order to avail oneself of this provision, the taxpayer must make an affirmative election as prescribed by the Secretary of the Treasury. *See* 26 U.S.C. § 172(b)(1)(H)(iii)(II). This differs from the general rule, previously discussed, where carryback is the default if the taxpayer makes no election to waive carryback. The prior adversaries dealt with setting aside the debtors' affirmative § 172(b)(3) elections to waive the two-year carryback – not the affirmative § 172(b)(1)(H) election that a taxpayer must expressly make in order to avail himself of the special three- to five-year carryback.

The statute establishes a deadline for making this election of "the due date (including extensions of time) for filing the return" for 2009. *Id.* The original due date for the debtors in these cases to file a 2009 return was April 15, 2010. In addition, for purposes of making a regulatory or statutory election, such as this one, a taxpayer is granted an automatic six-month extension beyond the return's original due

---

[3] Section 172(b)(1)(H)(ii) defines the applicable period as a taxable year ending after December 31, 2007, and beginning before January 1, 2010. This wording accounts for the fact that some taxpayers operate on a fiscal year that does not coincide with the calendar year. All of the debtors involved in this discussion operated on a calendar year ending on December 31st.

9

date, and does not need to file a request for extension. *See* Treas. Reg. § 301.9100-2(b). Thus, the deadline for the debtors (and all other calendar year taxpayers for 2009) to make the § 172(b)(1)(H) election was October 15, 2010.

In the case of debtor Ames, the October 15th deadline expired only two weeks after he filed his bankruptcy petition on October 1, 2010. Debtors Magee and Payne filed their petitions on January 3, 2011, and February 3, 2011, respectively, a few months after the election deadline. By the time the chapter 7 trustee filed all of the prior adversaries, the only option still available to the debtors or the trustee was the standard two-year carryback under § 172(b)(1)(A). Unfortunately for the bankruptcy estates, none of these debtors had gains in those years to which the NOLs could be applied.

## C. The Agreed Judgments

The agreed judgments set aside as fraudulent the debtors' affirmative elections under § 172(b)(3) to waive the carryback of their NOLs. The agreed judgments contained the following finding:

> Any election by the Debtor to carry the NOLs forward, rather than backward, were fraudulent transfers within the meaning of 11 U.S.C. § 548(a) (the "Transfers").

Technically, there is no provision in the IRC that allows a taxpayer to elect a carry forward. Rather § 172(b)(3) allows the taxpayer to relinquish the carryback. Once this has been done, § 172(b)(1)(A)(ii) brings the loss forward. Thus, the above finding in the agreed judgments references the § 172(b)(3) waiver election.

Section 550 of the Bankruptcy Code sets forth the remedies available to a trustee upon the avoidance of a fraudulent transfer. Under § 550(a)(1), a trustee may recover either the fraudulently transferred property or, with court approval, the value of the property. The trustee in this case entered into agreed judgments awarding him the transferred property. The agreed judgments found that "[p]ursuant to 11 U.S.C. §550(a)(1) the Trustee is entitled to amend the tax returns … to carry the NOLs backwards to prior years to potentially create a tax refund for the benefit of the bankruptcy estate." The agreed judgments specifically authorized the trustee "to file the appropriate tax forms for the [debtors] to carry the NOLs for the tax years 2008 and/or 2009 backwards to prior years, **as allowed by statute** …." (Emphasis added.)

The trustee filed amended tax returns for each of the debtors in which he requested an extended carryback under § 172(b)(1)(H). This special provision for an extended carryback was no longer available to the trustee because the deadline for making the election had long since passed. The parties have not argued that bankruptcy tolled the applicable deadline for the election. Moreover, there is no language in the agreed judgments which would toll or otherwise modify the affirmative duty to make the § 172(b)(1)(H) election within the time frame set by statute and in the prescribed manner.

Even if the trustee's elections could be construed as timely, the IRC requires an election for an extended carryback must be made in the manner prescribed by the Secretary. *See* 26 U.S.C. § 172(b)(1)(H)(iii)(II). That manner is prescribed by the Secretary in Revenue Procedure 2009-52. Revenue Procedure 2009-52 requires an

11

election statement be filed by attaching it to the appropriate return or form for the taxable year of the applicable NOL. The election statement must contain the following elements: (1) The taxpayer is electing to apply § 172(b)(1)(H); (2) under Rev. Proc. 2009-52; (3) that the taxpayer is not a TARP recipient nor, in 2008 or 2009, an affiliate of a TARP recipient; and (4) the length of the NOL carryback period the taxpayer is electing. *See* Rev. Proc. 2009-52 § 4.01 (3) and (4).

Here, an examination of the Form 1040X returns filed by each estate (and attached to each adversary complaint) shows that there is no statement that contains all of these elements. Under Part III, on the second page of each Form 1040X, there is a statement that could be construed as an election statement -- except it does not contain all of the required elements. That statement says the return is being amended to carryback a net operating loss and it identifies the NOL year and the year it is being carried back to (which in each case is either four or five years), but there is no reference to the code section, the revenue procedure, or to not being a TARP recipient/affiliate of a TARP recipient in 2008 or 2009. Even if the Form 1040X returns could be construed to comply with the technical requirements prescribed by the Secretary, the elections were made out of time in the present cases.

### D. Reformation of the Agreed Judgments

In his supplemental brief, the trustee acknowledges that the applicable statutes and rules do not allow him to elect extended carrybacks for the debtors. He asks this Court to "reform" the agreed judgments so that he can obtain extended carrybacks in contravention of the applicable statutes and rules that prescribe the time and manner

for making such an election. He argues that the parties' agreements should be reformed based on a mutual mistake, namely, that both parties believed that the bankruptcy estates would receive the refunds in the amounts he has requested. He also argues that the agreed judgments should be reformed because a monetary recovery for the estates by way of filing amended tax returns was "legally impossible, as a matter of law."

An agreed judgment is akin to a consent decree. Both are the same strange legal hybrid in which parties enter "a voluntary settlement agreement [that] could be fully effective without judicial intervention," and the power of the court to place a final judicial order rests with a compromise struck by the parties. *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir. 1983). The decision regarding whether to modify a consent decree lies solely within the discretion of the trial court. *Ruiz v. Lynaugh,* 811 F.2d 856, 861 (5th Cir. 1987).

"The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties." *Givens v. Ward,* 272 S.W.3d 63, 67 (Tex. App. -- Waco 2008, no pet.) (emphasis omitted) (quoting *Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex. 1987)). To reform a written contract, the party seeking reformation must satisfy a two-part test: (1) an original agreement exists between the parties, and (2) a mutual mistake occurred, made after the original agreement, in reducing the agreement to writing. *Id.* "A mistake by only one party to an agreement, not known to or induced by acts of the other party, is not grounds for

13

finding a mutual mistake." *St. Paul Lloyd's Ins. Co. v. Huang,* 808 S.W.2d 524, 527 (Tex App. -- Houston [14th Dist.] 1991, no writ) (citing *Johnson v. Snell,* 504 S.W.2d 397, 399 (Tex. 1973)).

Here, the agreed judgments clearly contemplated that there might be no recovery to the bankruptcy estates as a result of the amended tax returns. The agreed judgments expressly stated that the amended returns might "potentially" create tax refunds for the estates and that the NOLs would be applied backward "as allowed by statute." While the trustee is disappointed with the results of the bargain he struck, the mistake, if any, was not mutual, and it does not appear that either of the parties was laboring under any misconception of a material fact when they entered into the agreed judgments.

The trustee also asserts that reformation is necessary because neither party to the agreed judgments knew that "a Section 550 recovery by the means of 'filing a Form 1040X seeking to carry the losses and obtain a refund' of the losses was legally impossible, as a matter of law." The trustee's argument is nonsensical. Under the agreed judgments, it was entirely possible to obtain tax refunds if the debtors had gains in the two years prior to bankruptcy. The debtors, however, did not have any gains in those years to which the NOLs could be applied to produce a refund. Refunds were not impossible as a matter of law – the estates in these cases will not receive refunds as a matter of fact.

The trustee generally appeals to this Court's inherent equitable authority. In his supplemental brief, he repeatedly references the debtors' "bankruptcy sins."

Significantly, however, the undisputed facts do not establish any inequitable conduct by the debtors. With respect to debtors Magee and Payne, Congress had not enacted the WHBAA of 2009 when they filed the tax returns at issue. The choices available to them were to take the standard, two-year carryback or to waive the carryback and carry their NOLs forward to future years. They did not have any gains in the previous two years to which the NOLs could have been applied. Perhaps not surprisingly, they elected to waive the carryback and carry their losses forward.

The facts with respect to debtor Ames are more complicated. According to the trustee's adversary complaint, Ames filed for bankruptcy and then filed his 2009 tax return. Thus, the transfer the trustee sought to avoid in his initial adversary complaint was a post-petition transfer avoidable under § 549, not a pre-petition transfer avoidable under § 548. The United States pointed out this legal issue in its response to the trustee's adversary complaint. The agreed final judgment nonetheless set aside the debtor Ames' election to waive the carryback of his NOL under § 548.

Debtor Ames did not have any gains in the prior two years to which a standard, two-year carryback of his NOL would have applied. He made his election to waive the carryback on the eve of the deadline for making the separate, affirmative election necessary for an extended carryback under § 172(b)(1)(H). According to the trustee, an extended carryback would have produced a tax refund in the amount of $38,463. The trustee, however, has not provided this Court with any authority that would allow him to make a late election for Debtor Ames under § 172(b)(1)(H). The agreed judgments, as previously discussed, do not contain any tolling provision.

15

Furthermore, § 108(a) of the Bankruptcy Code, which generally provides that a bankruptcy petition tolls the commencement of an action, does not toll the time for filing a refund claim. *See TLI, Inc. v. U.S.*, 100 F.3d 424, 427 (5th Cir. 1996) (holding that a refund claim is not the equivalent of the "commencement of action").

In his supplemental brief, the trustee implies that the debtors' failure to elect an extended carryback is akin to depreciation. He requests that this Court add a monetary award to the agreed judgments to account for the debtors' failure to make the affirmative election necessary to receive an extended carryback. The trustee analogizes to fraudulent transfer cases in which the bankruptcy court awarded both the transferred property and its diminution in value following the fraudulent transfer. *See American Way Service Corp.*, 229 B.R. 496, 531 (Bankr. S.D. Fla. 1999). The present cases, however, do not involve the fraudulent transfer of assets that have depreciated.

In other fraudulent transfer cases involving an election to waive the carryback of an NOL, the trustee has received the tax refund that results when the NOL is applied to the gains in prior years as allowed by the IRC. In *In re Feiler*, 218 F.3d 948 (9th Cir. 2000), for example, the IRS would have applied the Feilers' NOLs to prior years and issued a tax refund of approximately $287,493 if they had done nothing. The Feilers affirmatively elected to waive the carryback. The chapter 7 trustee set aside this election as a fraudulent transfer and received a judgment for the amount of the tax refund.

The present cases are distinguishable from *Feiler* because the debtors are not **entitled** to refunds under the IRC. The parties had not calculated the amount of any

16

refunds due to the debtors, if any, when they entered into the agreed judgments. They deferred this issue to be resolved when the trustee filed amended returns for the debtors. The agreed judgments simply found that the trustee could amend the tax returns of the debtors to carry the NOLs backwards to prior years "as permitted by statute" in order to "potentially" create a tax refund for the benefit of the bankruptcy estates. Now, having discovered that applicable statutes do not produce any refund, the trustee seeks to reform the agreed judgments so that the estates will receive a monetary award in the amounts he requested in the amended tax returns. Section 550(a), however, does not guaranty a monetary recovery for the estate where the transferred asset had no value.

## V. CONCLUSION

For all the foregoing reasons, the Court concludes that the trustee has failed to establish that he is entitled to judgment as a matter of law. The trustee's attempts to claim refunds by making affirmative elections under § 172(b)(1)(H) were untimely, failed to comply with the requirements prescribed by the IRS, and fall outside the terms of the agreed judgments as well as § 550 of the Bankruptcy Code. The motion by the United States for summary judgment will be granted and the relief requested by the trustee in these adversaries will be denied by separate orders consistent with this memorandum opinion.

Signed on 7/30/2014

_Brenda T. Rhoades_   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

17